# EXHIBIT G

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**11/23/2022** at 12:33:00 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONCENTRIX CORPORATION, a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 37-2022-00042499-CU-MT-CTL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>**(1) PENAL CODE § 631; AND**<br>**(2) PENAL CODE § 632.7** |

# I. INTRODUCTION

**Defendant (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.concentrix.com (the "Website"); and (2) allows at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain.**

**Defendant does not obtain visitors' consent to either the wiretapping or the eavesdropping. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA") in numerous ways.**

# II. JURISDICTION AND VENUE

1. This Court has jurisdiction over all causes of action asserted herein.

2. Venue is proper in this Court because Defendant knowingly engages in activities directed at consumers in this County and engaged in the wrongful conduct alleged herein against residents of this County.

3. Any out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

# III. PARTIES

4. Plaintiff is a citizen of California residing in San Diego County.

5. Defendant is a corporation that owns, operates, and/or controls the Website.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and

scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

8. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

9. The California Invasion of Privacy Act ("CIPA") prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors when their conversations are being recorded or if third parties are eavesdropping on them.[1]

10. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant both ***wiretaps*** the conversations of all website visitors and allows a third party to ***eavesdrop*** on the conversations in real time during transmission. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight. . .**When people are chatting, you have direct access to their exact pain points.**"*). See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (downloaded October 2022).

11. Defendant's wiretapping and eavesdropping are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, Defendant's actions violate both industry norms and the legitimate expectations of consumers.[2]

12. To enable the ***wiretapping***, Defendant has covertly embedded software code that functions as a device and contrivance into its website that automatically intercepts, records and creates a transcripts of all conversations using the website chat feature. To enable the ***eavesdropping***, Defendant allows at least one independent third-party vendor (on information and belief, Webex,

---

[1] See www.leechtishman.com/insights/blog ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last downloaded October 2022).
[2] According to a recent poll, nearly eight in ten Americans believe that companies do not collect or share consumer data gathered online, while about seven in ten believe that they remain anonymous when engaged in online activities like web browsing and chatting. *Se*e https://www.ipsos.com/en-us/news-polls/data-privacy-2022 (last downloaded October 2022).

Talk.to, and/or SalesForce) to use a software device or contrivance to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and deeply personal.

13. Defendant neither informed visitors of this conduct nor obtained their consent to these intrusions.

14. Given the nature of Defendant's business, visitors often share highly sensitive personal data with Defendant via the website chat feature. As noted above, visitors would be shocked and appalled to know that Defendant secretly records those conversations, and would be even more troubled to learn that Defendant allows a third party to eavesdrop on the conversations in real time under the guise of "data analytics."

15. Defendant's conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

16. Plaintiff is a consumer privacy advocate with dual motivations for initiating a conversation with Defendant. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by California law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

17. In enacting CIPA, the California legislature intentionally chose to extend its protections to all "persons" utilizing public telephone lines. Indeed, because the legislature expressly extended protection to persons beyond individuals claiming pecuniary loss, statutes like CIPA are largely enforced by civic-minded "testers" such as Plaintiff. See *Tourgeman v. Collins Fin. Servs.*, Inc., 755

F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).[3]

18. Within the last year, Plaintiff visited Defendant's Website. Plaintiff used a smart phone (a cellular telephones with an integrated computer to enable web browsing) and had a conversation with Defendant. As such, Plaintiff's communications with Defendant were transmitted from a "cellular radio telephone" as defined by CIPA.

19. By definition, Defendant's chat communications from its website are transmitted to website visitors by telephony subject to the mandates of CIPA: "[T]hough written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022). *See also* https://www.britannica.com/technology/Internet ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last downloaded October 2022).

20. Defendant did not inform Plaintiff or Class Members that Defendant was secretly recording their conversations or allowing, aiding, and abetting a third party to intercept and eavesdrop on them in real time. Plaintiff did not learn that Defendant secretly recorded their conversation or allowed a third party to eavesdrop upon it until after the conversation was completed and additional, highly technical research was completed.

21. Defendant did not obtain Class Members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did Class Members know at the time of the conversations that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

---

[3] Civil rights icon Rosa Parks was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to an illegal practice to obtain standing to challenge the practice in Court. *See* https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ "(*Contrary to popular myth, Rosa Parks was not just a tired seamstress who merely wanted to sit down on a bus seat that afternoon. She refused to give up her seat on principle. Parks had long served as the secretary of the Montgomery branch of the NAACP [and] challenging segregation in Montgomery's transportation system was on the local civil rights agenda for some time.*") (last downloaded October 2022).

## V. CLASS ALLEGATIONS

22. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the United States who: (1) visited Defendant's website, and (2) whose electronic communications were recorded, stored, and/or shared by Defendant without prior express consent within the statute of limitations period.**

23. <u>NUMEROSITY</u>: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

24. <u>COMMONALITY</u>: Common questions of fact and law exist as to all class members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

   a. Whether Defendant caused electronic communications from class members with the Website to be recorded, intercepted, and/or monitored;

   b. Whether Defendant aided and abetted a third party in eavesdropping on such communications;

   c. Whether Plaintiff and Class Members are entitled to statutory penalties; and

   d. Whether Class Members are entitled to injunctive relief.

25. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose chat was recorded, intercepted and eavesdropped upon without prior knowledge or consent, Plaintiff is asserting claims that are typical of the Class.

26. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

27. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

**FIRST CAUSE OF ACTION**

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 631**

28. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". ***Here, Defendant does all three.***

*29.* Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

30. The software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

31.     At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class Members with Defendant's Website to be recorded. Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

32.     Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.

33.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and Class Members to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 632.7**

34.     Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." As summarized by the California Supreme Court in *Smith v. Loanme*, under section 632.7(a) it is a crime when a person intercepts or records "a communication transmitted between a cellular or cordless telephone and another telephone." Stated differently, only one party to the conversation needs to be using a cellular phone for the prohibitions of Section 632.7 to apply.

35.      Section 632.7 defines "Communication" exceptionally broadly – including not only voice communication, but also communications transmitted by "data, or image, including facsimile." Text messages sent from a smart phone to a computer or internet, like the messages at issue here, are considered data transmissions via cellular telephony to landline telephony, thus subject to Section 632.7. *See* https://www.techtarget.com/searchmobilecomputing/definition/texting ("*Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . .* **Users can also send text messages from a**

*computer to a hand-held device. Web texting, as it's called, is made possible by websites called SMS gateways."*) (last downloaded October 2022).

36. Courts have applied Section 632.7 to internet data communications like those at issue here. *See Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) Moreover, Section 637.2 "apply to all communications, not just confidential communications." *Kearney v. Salomon Smith Barney*, *Inc.* (2006) 39 Cal.4th 95, 122.

37. Plaintiff and the class members communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

38. Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

39. As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

40. As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

41. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff and Class Members to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Punitive damages;
7. Reasonable attorneys' fees and costs; and

8. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: November 23, 2022                    PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff